UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2004-7,<br><br>     Plaintiff,<br> vs.<br><br>SFR INVESTMENTS POOL 1, LLC; MONTAGNE MARRON COMMUNITY ASSOCIATION; ALESSI & KOENIG, LLC,<br><br>     Defendants.<br>_____<br>SFR INVESTMENTS POOL 1, LLC,<br><br>     Counter/Cross Claimant.<br> vs.<br><br>THE BANK OF NEW YORK FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2004-7; and JOHN EDWARD BOSTAPH, JR.,<br><br>     Counter/Cross Defendants. | Case No.: 2:16-cv-00847-GMN-DJA<br><br>**ORDER** |

   Pending before the Court is the Motion for Summary Judgment, (ECF No. 84), filed by Defendant Montagne Marron Community Association ("HOA"). Plaintiff Bank of New York Mellon, FKA Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc.

Page 1 of 17

Asset-Backed Certificates, Series 2004-7 ("BNYM") filed a Response, (ECF No. 88), and HOA filed a Reply, (ECF No. 94).

Also pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 85), filed by BNYM. Defendant HOA and SFR Investments Pool 1, LLC ("SFR") filed Responses, (ECF Nos. 89, 91). BNYM filed a Reply, (ECF No. 93).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 86), filed by Defendant SFR. BNYM filed a Response, (ECF No. 87), and SFR filed a Reply, (ECF No. 92).

For the reasons discussed below, the Court **GRANTS** BNYM's Motion for Partial Summary Judgment and **DENIES** SFR's and HOA's Motions for Summary Judgment.

I.  **BACKGROUND**

This case arises from the non-judicial foreclosure sale of the real property located at 10949 Sospel Place, Las Vegas, NV 89141-3813 (the "Property"). (Deed of Trust ("DOT"), Ex. A to BNYM's Mot. Partial Summ. J., ECF No. 85-1).[1] On July 14, 2004, John Edward Bostaph, Jr. ("Bostaph") financed his purchase of the Property by way of a $302,400.00 loan secured by a DOT identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (*Id*. at 2–3). The DOT was recorded on July 20, 2004. (*Id*.). In 2012, MERS

---

[1] The Court takes judicial notice of the following publicly recorded documents: (A) Deed of Trust; (C) Assignment of Deed of Trust; (D) Notice of Delinquent Assessment; (E) Notice of Default and Election to Sell; (H) Notice of Trustee's Sale recorded on March 31, 2010; (I) Notice of Trustee's Sale recorded on September 22, 2011; (J) Trustee's Deed Upon Sale; (L) Alessi & Koenig, LLC's Arbitration Brief; and (S) Quitclaim Deed recorded April 8, 2013 and May 22, 2013. (Mot. Partial Summ. J. 6:1–9). These are matters of public record recorded in the Clark County Recorder's Office, and are appropriate for judicial notice under Federal Rules of Evidence 201(b)(2). Furthermore, Defendants do not object to the Court taking judicial notice of the above documents. (*See* SFR's Resp. 3:26–4:9). Accordingly, it is proper for the Court to consider these documents when reviewing the pending Motion for Partial Summary Judgment. *See Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1098 (D. Nev. 2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including public documents.").

assigned its interest to BNYM. (Assignment of DOT, Ex. C to BNYM's Mot. Partial Summ. J., ECF No. 85-3).

On July 26, 2010, upon Bostaph's failure to stay current on his loan obligations, HOA initiated foreclosure proceedings on the Property through its agent, Alessi & Koenig, LLC ("Alessi & Koenig"). (Notice of Delinquent Assessment Lien, Ex. D to BNYM's Mot. Partial Summ. J., ECF No. 85-4). On September 28, 2009, HOA via Alessi & Koenig recorded a Notice of Default and Election to Sell. (Notice of Default and Election to Sell, Ex. E to BNYM's Mot. Partial Summ. J., ECF No. 85-5). HOA recorded a Notice of Sale on March 31, 2010. (Notice of Trustee's Sale recorded March 31, 2010, Ex. H to BNYM's Mot. Partial Summ. J., ECF No. 85-8). On September 22, 2011, HOA recorded another Notice of Sale. (Notice of Trustee's Sale recorded September 22, 2011, Ex. I to BNYM's Mot. Partial Summ. J., ECF No. 85-9).

On October 19, 2011, HOA, through Alessi & Koenig, proceeded with the foreclosure sale, selling the Property at an auction to itself for $11,343.10. (Trustee's Deed Upon Sale, Ex. J to BNYM's Mot. Partial Summ. J., ECF No. 85-10). HOA then issued a quitclaim deed transferring title to SFR on April 8, 2013. (Quitclaim Deed, Ex. S to BNYM's Mot. Partial Summ. J., ECF No. 85-19).

Plaintiff BNYM filed its Complaint on April 14, 2016, asserting the following causes of action arising from the foreclosure and sale of the Property: (1) quiet title/declaratory relief against SFR and HOA; (2) breach of NRS 116.1113 against HOA and Alessi & Koenig; (3) wrongful foreclosure against HOA and Alessi & Koenig; and (4) injunctive relief against SFR. (Compl. ¶¶ 27–67, ECF No. 1).

On April 18, 2018, the Court granted BNYM's Motion for Partial Summary Judgment. (Order Granting Summ. J., ECF No. 54). Following Defendant SFR's Notice of Appeal, the Court vacated its previous order for having relied on *Bourne Valley Court Trust v. Wells Fargo*

*Bank, N.A.*, which had been repudiated by the Nevada Supreme Court in the interim. (Order Vacating Prior Order, ECF No. 59). The Ninth Circuit ultimately reversed the Court's judgment, finding that Nevada's HOA foreclosure scheme is not facially unconstitutional because the court's decision in *Bourne Valley* no longer controls in light of *SFR Investments Pool 1, LLC v. Bank of New York Mellon*. (Order of USCA, Ninth Circuit, ECF No. 65). Following the Ninth Circuit's decision to reverse and remand this Court's prior judgment, the parties filed the instant Motions for Summary Judgment. (HOA's Mot. Summ. J., ECF No. 84); (BNYM's Mot. Partial Summ. J., ECF No. 85); (SFR's Mot. Summ. J., ECF No. 86).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

(internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   DISCUSSION

In its Motion, BNYM seeks summary judgment on four grounds. First, BNYM argues that HOA's failure to provide statutory notice pursuant to NRS Chapter 116 voids the HOA foreclosure sale. (*See* BNYM's Mot. Partial Summ. J. 6:16–8:13). Second, BNYM contends that tender was futile because Alessi and Koenig would have rejected any check delivered by BANA that purported to satisfy BANA's obligations to the HOA. (*Id.* 8:14–10:18). Third, BNYM asserts that equity warrants setting aside or reforming the sale. (*Id.* 10:19–13:17). Lastly, BNYM claims that allowing the HOA foreclosure sale to extinguish the DOT violates due process as-applied. (*Id.* 13:18–14:13).

SFR makes three arguments in support of its claim that it took title to the property free and clear of the DOT. First, BNYM is time-barred from challenging the HOA foreclosure sale because BNYM filed suit over four years from the date of the foreclosure sale. (SFR's Mot. Summ. J. 7:10–14:18). Second, the DOT was extinguished by the HOA's non-judicial

foreclosure sale. (*Id*. 14:19–17:3).  Lastly, SFR requests the Court expunge BNYM's Lis Pendens. (*Id*. 17:4–18:6).

HOA similarly argues that BNYM's claims are time-barred because a three-year statute of limitations applies. (HOA's Mot. Summ. J. 5:18–8:20).  In addition, HOA makes a number of arguments, including: (1) that there is no statutory requirement that HOA state the exact superpriority amount in the Notices; (2) that BNYM's claim of wrongful foreclosure is without merit; (3) that the HOA foreclosure sale was commercially reasonable; and (4) that BNYM's constitutional challenge to NRS Chapter 116 fails in light of *Bourne Valley*. (*Id*. 9:16–15:17).  The Court first addresses whether BNYM's claims are time-barred.

**A. Statute of Limitations**

SFR and HOA argue that BNYM's claims should be dismissed because they are time-barred by the three-year statute of limitations set forth under NRS 11.190(3)(a), or at a minimum, by the four-year catch-all time limit in NRS 11.220. (SFR's Mot. Summ. J. 7:10–14:18); (HOA's Mot. Summ. J. 5:18–8:20).

The Court rejects Defendants' argument that NRS 11.190(3)(a) controls.  That statute provides a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." *See* NRS 11.190(3)(a).  Despite bringing the claim under, *inter alia*, 28 U.S.C. § 2201, and NRS 40.010, (*see* Compl. ¶ 46), BNYM's plea to quiet title does not constitute liability created by statute. *See Torrealba v. Kesmetis*, 178 P.3d 716, 722 (Nev. 2008) ("The phrase 'liability created by statute' means a liability which would not exist but for the statute.") (quoting *Gonzalez v. Pac. Fruit Exp. Co.*, 99 F. Supp. 1012, 1015 (D. Nev. 1951)).  BNYM seeks a declaration concerning the viability of its DOT by invoking the court's long-standing "inherent equitable powers" to settle title disputes. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016) (reaffirming that NRS 40.010 "essentially codified the court's existing equity jurisprudence") (*citing Clay v. Scheeline Banking & Tr. Co.*,

159 P. 1081, 1082 (Nev. 1916) ("[T]here is practically no difference in the nature of the action under our statute and as it exists independent of statute.")). Because actions to quiet title exist independent of statute under a court's inherent equitable jurisdiction, NRS 11.190(3)(a) does not apply.

Instead, this Court has previously applied the five-year limitations period under NRS § 11.070 for quiet title claims arising from HOA foreclosure sales. *Lakeview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:16-cv-01648-GMN-CWH, 2019 WL 1410885, at *5 (D. Nev. Mar. 28, 2019); *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016) ("Under Nevada law, Spencer could have brought claims challenging the HOA foreclosure sale within five years of the sale."); *Scott v. Mortg. Elec. Registration Sys., Inc.*, 605 Fed. Appx. 598, 600 (9th Cir. 2015) ("The statute of limitations for quiet title claims in Nevada is five years."); *Bank of Am., N.A. v. Antelope Homeowners' Ass'n*, No. 2:16-cv-00449-JCM-PAL, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017); *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *3 (D. Nev. Mar. 31, 2016). Applying the five-year statute of limitations, BNYM timely filed its claims. The foreclosure sale occurred on October 19, 2011, and Plaintiff BNYM filed suit on April 14, 2016. BNYM, therefore, filed its claims within the five-year statute of limitations. Accordingly, the Court finds that BNYM's claims are not time barred.

### B.  Quiet Title

BNYM argues that HOA's failure to mail its Notice of Default and first Notice of Sale to MERS, the record deed of trust beneficiary, voids the sale as to the DOT. (BNYM's Mot. Partial Summ. J. 6:16–8:13). Specifically, BNYM argues that: (1) HOA failed to mail its Notice of Default or first Notice of Sale to MERS; (2) there is no evidence MERS or the loan servicer, BANA, received the notice of default or first notice of sale by alternate means; and (3) HOA's failure to provide notice resulted in prejudice. (*Id*. 7:11–28).  SFR and HOA argue, in

response, that Alessi & Koenig's mailed notice to Royal Crown Bancorp ("Bancorp"), the lender, provided sufficient notice. (SFR's Resp. 8:18–9:8, ECF No. 91); (HOA's Resp. 7:18–8:18, ECF No. 89).

NRS Chapters 116 and 107 together create a notice scheme that requires a homeowners' association to mail notice of its impending foreclosure sale to "[e]ach . . . person with an interest whose interest or claimed interest is subordinate" using the "last known address" of the subordinate interest holders. *U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC ("Resources Group II")*, 444 P.3d 442, 446 (Nev. 2019) (quoting Nev. Rev. Stat. § 107.080(3), (4)); Nev. Rev. Stat. § 107.090(2). An HOA's non-judicial foreclosure sale is void if: (1) the HOA failed to substantially comply with the notice scheme in NRS Chapter 116; (2) a person entitled to notice under NRS Chapter 116 did not have actual notice of the sale; and (3) the notice deficiency prejudiced a party who held an interest in the property at the time of sale. *See id*.

HOA via Alessi & Koenig recorded one Notice of Default and two Notices of Sale—one Notice of Sale was recorded on March 31, 2010 and the other on September 22, 2011. (*See* Notice of Default, Ex. E to BNYM's Mot. Partial Summ. J.); (Notice of Sale recorded March 31, 2010, Ex. H to BNYM's Mot. Partial Summ. J.); (Notice of Sale recorded September 22, 2011, Ex. I to BNYM's Mot. Partial Summ. J.). The parties, in this case, do not dispute that HOA via Alessi & Koenig mailed a Notice of Default and Notice of Sale to Bancorp, the lender. (HOA's Resp. 7:21–23); (SFR's Resp. 9:4–5). In addition, the parties do not dispute that HOA via Alessi & Koenig mailed a Notice of Sale recorded September 22, 2011 to MERS. (BNYM's Mot. Partial Summ. J. 8:6–7); (SFR's Resp. 9:10–11). The Court first discusses whether HOA statutorily compiled with NRS Chapter 116 by mailing notices to Bancorp.

                i.   <u>Statutory Compliance with NRS Chapter 116</u>

SFR and HOA argue that HOA's notices to Bancorp complied with NRS Chapter 116. (SFR's Resp. 8:18–9:8); (HOA's Resp. 7:18–8:18). An HOA seeking to foreclose on the

superpriority portion of its lien must send the notices of default and sale to the record beneficiaries of junior DOTs. *See* NRS §§ 116.31168(1); 107.090(1) and (4); 116.21163 (requiring HOA to send notice to each "person with an interest" in the property); *see also U.S. Bank, N.A. v. Renovista Ridge Master Prop. Owners Ass'n*, 352 F. Supp. 3d 1034, 1040–41 (D. Nev. 2018); *Nationstar Mortg., LLC v. Sahara Sunrise Homeowners Ass'n*, No. 2:15-cv-01597-MMD-NJK, 2019 U.S. Dist. LEXIS 42231, 2019 WL 1233705, at *3 (D. Nev. Mar. 14, 2019) (explaining notice to MERS is required when it is the record beneficiary of the DOT). Here, HOA did not substantially comply with NRS Chapter 116 when it failed to mail MERS the Notice of Default and Notice of Sale recorded on March 31, 2010. In September 2009, Alessi & Koenig recorded a Notice of Default and Election to Sell. (*See* Notice of Default, Ex. E to BNYM's Mot. Partial Summ. J.). That notice was sent to Bancorp and Bostaph, but there is no evidence that it was sent to MERS or BAC. (*See* David Alessi's Aff. at 3, Ex. G to BNYM's Mot. Partial Summ. J., ECF No. 85-7). In March 2010, Alessi & Koenig recorded a Notice of Trustee's Sale. (*See* Notice of Sale recorded March 31, 2010, Ex. H to BNYM's Mot. Partial Summ. J.). That notice was sent to Bancorp, Bostaph, and Ombudsman's Office, but, again, there is no evidence that it was sent to MERS or BAC. (*See* David Alessi's Aff. at 12, Ex. G to BNYM's Mot. Partial Summ. J.). In September 2011, Alessi & Koenig recorded another Notice of Trustee's Sale. (*See* Notice of Sale recorded September 22, 2011, Ex. I to BNYM's Mot. Partial Summ. J.). That notice was sent to MERS, Bancorp, Bostaph, Ombudsman's Office, First American Title Company, and Republic Services. (*See* David Alessi's Aff. at 14–15, Ex. G to BNYM's Mot. Partial Summ. J.). Thus, although MERS received the second Notice of Sale, MERS did not receive the Notice of Default and the first Notice of Trustee's Sale recorded in March 2010. HOA thereby failed to provide MERS—the record beneficiary—the statutorily required notice under NRS Chapter 116. *See Resources Group II*, 444 P.3d 442, 445 (2019) ("Taken together, these statutes require an HOA seeking to foreclose a superpriority

lien to send the holder of a recorded first deed of trust notices of default and of sale, even though the deed of trust holder has not formally requested them.").

BNYM has further established through recorded documents and the affidavits of David Alessi, representative for Alessi & Koenig, that MERS was the record beneficiary of the DOT when the foreclosure-related notices were dispatched in 2009 and 2010.[2]  Not only was MERS listed as the beneficiary in the DOT, but MERS was also listed as a beneficiary in the title report Alessi & Koenig obtained prior to the sale. (*See* DOT at 2, Ex. A to BNYM's Mot. Partial Summ. J.); (*see also* David Alessi's Aff. at 9, Ex. G to BNYM's Mot. Partial Summ. J.). BNYM thus provides uncontroverted evidence that Alessi & Koenig, on behalf of HOA, failed to send MERS all the statutorily required notices—the Notice of Default and the first Notice of Sale recorded on March 31, 2010. (*See* Excerpt of David Alessi's Depo., Ex. F to BNYM's Mot. Partial Summ. J., ECF No. 85-6).  The Court accordingly finds that HOA failed to meet the statutory notice requirements under NRS Chapter 116.

### ii. Actual Notice and Prejudice

In addition to demonstrating statutory compliance, BNYM must also demonstrate that the person entitled to notice—MERS—did not have actual notice and that the notice deficiency prejudiced a party who held an interest in the property at the time of the sale. *See Resources Group II*, 135 Nev. 199, 444 P.3d 442 (Nev. 2019).  Although BNYM demonstrates that the notice failure prejudiced both BANA and BNYM,[3] MERS had actual notice prior to HOA's foreclosure sale.  HOA mailed the second Notice of Sale recorded September 22, 2011 to

---

[2] While MERS later assigned its DOT to BNYM, this assignment occurred in 2012, after the HOA foreclosure sale. (Assignment of DOT, Ex. C to BNYM's Mot. Partial Summ. J.).

[3] In Amy Bernal's Declaration, she testifies that, "[h]ad BANA or BAC received [HOA's] notice of default and election to sell or either of its notices of trustee's sale prior to the sale, it would have retained Miles Bauer to submit a superpriority payment in accordance with its policy." (Amy Bernal's Decl. ¶ 12, Ex. B to BNYM's Mot. Partial Summ. J., ECF No. 85-2).

1  MERS on or about September 27, 2011. (*See* Amy Bernal's Decl. at 9, Ex. B to BNYM's Mot.
2  Partial Summ. J.).  The HOA foreclosure sale occurred approximately a month later, on
3  October 19, 2011. (*See* Trustee's Deed Upon Sale, Ex. J. to BNYM's Mot. Partial Summ. J.).
4  Indeed, BNYM does not dispute that MERS received the second Notice of Sale. (BNYM's
5  Mot. Partial Summ. J. 7:26–27, 8:6–13).

6        BNYM, however, argues that mailing the third notice of sale to MERS did not cure any
7  of the prejudice caused by the failure to send the other three notices[4] to MERS because BANA
8  did not receive the third notice of sale until after the foreclosure sale. (BNYM's Reply 7:7–14).
9  BNYM, however, fails to establish that BANA had a claimed interest. *See Bank of Am., N.A. v.*
10 *Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019) ("HOA must give
11 notice to all junior interest holders regardless of any request").  Though Bancorp originated the
12 loan in 2004, BNYM later became the owner of the loan. (Amy Bernal's Decl. ¶ 7, Ex. B to
13 BNYM's Mot. Partial Summ. J.).  BANA and BAC were merely servicers of the loan. (*See id*. ¶
14 8).  Furthermore, BNYM fails to provide evidence that BANA and BAC recorded an interest on
15 the Property.  Regardless, even though earlier notice to MERS would have given MERS and
16 BANA more time to initiate and complete a pre-sale tender, MERS—the record beneficiary
17 with a claimed interest—ultimately received actual notice prior to the HOA foreclosure sale.
18 The Court therefore does not find the foreclosure sale void for HOA's failure to comply with
19 the notice requirements under NRS Chapter 116.

20       **C. Futility**

21       BNYM nevertheless argues that tender was futile because Alessi & Koenig would have
22 rejected any check delivered by BANA that purported to satisfy BNYM's obligations to the
23 HOA. (BNYM's Mot. Partial Summ. J. 8:14–10:18).  SFR, in response, asserts that Alessi &

---

[4] The Court is only aware of two other notices that HOA allegedly failed to send to MERS—the Notice of Default and the Notice of Sale recorded on March 31, 2010.

Koenig "never had a policy to reject partial payments." (SFR's Resp. 11:16–17).  Furthermore, because BNYM never intended to tender payment in the first place, SFR contends that BNYM cannot claim excuse/futility of tender. (*Id*. 11:13–22).

Under Nevada law, a DOT holder generally must tender the amount of a superpriority lien for the DOT holder to preserve its interest in the property prior to a superpriority foreclosure sale. *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 134 Nev. 604, 605, 427 P.3d 113, 116 (2018) (holding that "a first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust.").  However, an exception arises if the DOT holder can demonstrate that tender would have been futile because "evidence shows that the party entitled to payment had a known policy of rejecting such payments." *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 136 Nev. 62, 63, 458 P.3d 348, 350 (2020).

Here, BNYM submits evidence, including excerpts of testimony from a trial in a different case, a declaration by Rock Jung, attorney at Miles Bauer, an affidavit from David Alessi, and an NRED arbitration brief that all purport to demonstrate that Alessi & Koenig had a policy of rejecting checks that had conditions accompanying them. (BNYM's Mot. Partial Summ. J. 9:5–10:18).  The Nevada Supreme Court in *U.S. Bank Nat'l Ass'n, Tr. to Wachovia Bank, N.A. v. SFR Investments Pool 1, LLC*, held that an arbitration brief joined by the HOA agent was sufficient to demonstrate that the agent "had a 'known policy of reject[ion]' sufficient to excuse formal tender." *U.S. Bank Nat'l Ass'n, Tr. to Wachovia Bank*, 464 P.3d 125 (Nev. 2020).  The arbitration brief stated that the agent "did not believe the superpriority component of an HOA's lien came into existence until after the first deed of trust was foreclosed." *Id*.  The necessary implication, therefore, was that the agent "would not accept a superpriority tender before the first deed of trust was foreclosed." *Id*.

Alessi & Koenig's arbitration brief, in this case, likewise implies that Alessi & Koenig had a policy of rejecting the superpriority tender prior to the HOA foreclosure sale. Specifically, the arbitration brief states:

> "Claimant further argues that a mortgage lender, such as itself, has the right to satisfy an HOA lien by paying the HOA the super-priority amount prior to conducting a foreclosure of the first security interest. However, under NRS 116.3116, an HOA has a lien against a unit for all delinquent assessments and related charges up until the first security interest on the unit is foreclosed. The HOA assessment lien is only eliminated, save for the super priority amount, when the mortgage lender forecloses on the unit. Therefore, where, as in most cases, the full HOA lien amount exceeds the super priority amount, the mortgage lender's payment of the super priority amount would constitute only a partial payment. Further, there exists no statutory or other authority that would compel an HOA to accept payment of any amount from a mortgage lender."

(*See* Arbitration Brief 4:3–12, Ex. L to BNYM's Mot. Partial Summ. J., ECF No. 85-12). As demonstrated in the arbitration brief, Alessi & Koenig did not believe that a mortgage lender had the right to satisfy an HOA lien by paying the superpriority amount prior to the foreclosure of the first security interest. (*Id*. 4:3–5). The necessary implication is, therefore, that Alessi & Koenig would not accept a tender of the superpriority amount prior to the HOA foreclosure. *See U.S. Bank Nat'l Ass'n, Tr. to Wachovia Bank*, 464 P.3d 125 (Nev. 2020). Furthermore, neither SFR nor HOA respond to BNYM's evidence of the arbitration brief.[5] The Court accordingly finds that BNYM demonstrates that Alessi & Koenig had a known policy of rejecting superpriority tenders.

BNYM additionally establishes that BANA had knowledge of this business practice. To support this assertion, BNYM attaches the trial transcript from a bench trial in a state court case

---

[5] HOA does not address BNYM's futility argument in its Response. While SFR addresses BNYM's futility argument, SFR attacks the credibility of the letters BNYM attached, claiming that the letters are inadmissible hearsay. (SFR's Resp. 16:2–20). SFR, however, does not mention the arbitration brief BNYM attaches in its Motion.

involving Alessi & Koenig, BNYM, and SFR. (*See* Trial Transcript Day One, Ex. M to BNYM's Mot. Partial Summ. J., ECF No. 85-13); (Trial Transcript Day Three, Ex. N to BNYM's Mot. Partial Summ. J., ECF No. 85-14); (Trial Transcript Day Two, Ex. O to BNYM's Mot. Partial Summ. J., ECF No. 85-15). On day two of the trial, Rock Jung, an attorney at Miles Bauer from October 2009 to March 2014, testified that BANA hired Miles Bauer over 5,000 times to pay the superpriority portion of an HOA's lien and that from Alessi they received a "blanket general letter . . . stating that they will not be able to accept the payment." (Trial Transcript Day Two 33:23–25, 38:13–20, Ex. O to BNYM's Mot. Partial Summ. J.). Shawn Look, Assistant Vice President at BANA, testified that BANA was considering filing "global suit at the state and federal level against Alessi and some of the other trustees regarding their rejection of the bank's tender." (*Id*. 17–19). Taken together, these testimonies demonstrate that BANA and its agent, Miles Bauer, had knowledge of Alessi & Koenig's business practice of rejecting tender of the superpriority portion prior to the HOA foreclosure sale in 2011. Indeed, neither SFR nor HOA dispute the admissibility of the trial testimonies.[6] As a result, BNYM was excused from making a formal tender pursuant to *Perla Del Mar* because, even if BANA tendered a check for the superpriority portion of the lien, Alessi & Koenig would have rejected it. The Court accordingly finds that BNYM preserved its interest in the Property such that SFR purchased the property subject to BNYM's DOT.[7]

---

[6] Instead, SFR disputes the admissibility of three letters which are attached to Exhibit K, Alessi & Koenig's Correspondence with Miles Bauer. (*See* Alessi & Koenig's Correspondence, Ex. K. to BNYM's Mot. Partial Summ. J., ECF No. 85-11).

[7] SFR also argues that BNYM cannot validly claim futile tender because Miles Bauer neither intended nor offered a valid tender. (SFR's Resp. 12:1–14:16). A demonstration of futile tender, however, excuses the DOT-holder from formally tendering the superpriority lien to preserve the first DOT. *See 7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A*., 458 P.3d 348, 349 (2020) (finding that "formal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting such payments"); *see also CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n*, 962 F.3d 1103, 1109 (9th Cir. 2020) (noting that "the Nevada Supreme Court explained that the ruling in Perla Del Mar was based on 'a generally accepted *exception*' to the rule requiring actual tender") (emphasis added). Accordingly, the Court finds it immaterial whether BNYM and BANA intended to tender the superpriority amount in this case.

### D. Remaining Claims

In its prayer for relief, BNYM requests "an order declaring that HOA and SFR purchased the property subject to BNYM's senior deed of trust." (Compl. 12:10–11). BNYM's other requested forms of relief are phrased in the alternative. (*See id*. 12:12–16). Because the Court finds that BNYM was excused from tendering the superpriority portion of the lien and therefore, BNYM preserved its DOT prior to the foreclosure sale, BNYM receives the relief it requested. As to BNYM's request for preliminary injunction, the Court's grant of summary judgment for BNYM moots this claim, and it is therefore dismissed.

Accordingly, because the Court finds that BNYM preserved its DOT prior to the foreclosure sale, the Court hereby denies Defendant HOA's Motion for Summary Judgment, (ECF No. 84), and Defendant SFR's Motion for Summary Judgment, (ECF No. 86). Furthermore, because BNYM's remaining claims are raised in the alternative and summary judgment in favor of BNYM forecloses Defendants' ability to seek relief on its counterclaims, this Order closes the case.

//
//
//
//
//
//
//
//
//
//
//

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff BNYM's Motion for Partial Summary, (ECF No. 85), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant HOA's Motion for Summary Judgment, (ECF No. 84), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant SFR's Motion for Summary Judgment, (ECF No. 86), is **DENIED**.

The Clerk of Court is hereby instructed to close the case and enter judgment accordingly.

**DATED** this 25 day of February, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT